IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

In re:

DENTAL PROFILE, INC., and
DENTIST, P.C.

       Debtors.

) Case No.: 08-17148 and 08-17149
) (Jointly Administered)
)
) Chapter 11
)
) Hon. Jacqueline P. Cox
)
)

**JOHNSON'S MEMORANDUM OF LAW IN SUPPORT OF
HER ANSWER TO CREDITOR MENDEZ'S MOTION FOR SANCTIONS**

NOW COMES, Cindy M. Johnson ("Johnson") of Johnson Legal Group, LLC, attorney for Dr. Husam Aldairi, ("Aldairi"), Aya Dental, Ltd.("Aya") and Husgus, LLC, ("Husgus"),  and in support of her answer to "Creditor Mendez's Motion for Sanctions" (the "Motion") files this memorandum of law.

### Introduction

There is no basis in law or in fact for Johnson to be sanctioned in this Cases. Johnson was not responsible for the filing of the Debtors' cases in bankruptcy.  Johnson did nothing wrong by representing her clients, who were not the Debtors, in the request made of Mendez for their financial information under Rule 2004, in the appeal of the order granting that request, or in defense of Aldairi against the contempt motion that this Court decided applied to Aldairi (without him being mentioned in the motion), or in defense of the Motion for Sanctions currently at issue.

Merely because Mendez does not like what happened, does not mean she is entitled to have her attorneys' fees paid by someone else.

### Background Facts

On July 02, 2008, Dental Profile, Inc and Dentist, P.C. ("Debtors") filed voluntary petitions under Chapter 11 of Title 11 of the United States Bankruptcy Code, and, until

the cases were dismissed on January 12, 2010, were operating as Debtors in Possession. Aldairi is the owner of all of the shares of both Debtors. Nereida Mendez ("Mendez") filed a proof of claim against Debtors in the amount of $868,547.88 and claims to be a creditor of the Debtors.

Over a year after the Debtors' bankruptcy cases were filed, Mendez filed a motion to conduct Rule 2004 examinations against Broadway Bank and JP Morgan Chase Bank in order to discover financial information those two institutions had as to not only the Debtors but also as to Aldairi, Husgus, Aya and all other entities owned by Aldairi. Johnson was retained by Aldairi, Aya, Husgus and the non-debtor entities suggested by the motion (collectively "Non-Debtor Clients") to object to the motion.

Johnson objected on behalf of the Non-Debtor Clients to the Rule 2004 subpoenas being entered. Mendez had previous brought a complaint in the Circuit Court of Cook County to pierce the corporate veil in order to try to have the judgment that had been entered against Perla Dental and Dental Profile in 04 C 4159 held to also be against Aldairi. The state court complaint had been dismissed as failing to state a claim and Mendez had been given leave amend, but continuously delayed that process in state court (such that even as of today, she has not filed an amended complaint). Non-Debtor Clients' argument was that Mendez was using the bankruptcy process to get discovery for her state court action before she had a good complaint on file and was able to actually plead any piercing. Johnson further argued on behalf of Non-Debtor Clients that Mendez had mad no showing whatsoever that the records of Johnson's clients were in any way relevant to the operations of the Debtors—other than Creditor's unsubstantiated theory in her motion for the Rule 2004 examination.

This Court overruled the objection, and allowed the Rule 2004 subpoenas to be issued. Johnson, on behalf of Non-Debtor Clients filed an appeal. The appellate court determined that the order from which the appeal was taken—the order allowing the

Rule 2004 examinations to proceed—was interlocutory not final. It dismissed the appeal on February 1, 2010 (about three weeks after these bankruptcy cases were dismissed). In the order dismissing the appeal, Judge Aspen noted that Creditor had asked that Non-Debtor Clients be required to pay her attorneys' fees and that he was denying the request as there was no basis for the request.

Meanwhile, in the bankruptcy court, this Court stated in open court that it did not necessarily agree that Aldairi could not be personally sanctioned under the pending contempt motion against Debtors (for alleged discovery violations by the Debtors). Johnson represented Aldairi in filing a motion in limine to clarify that the law did not provide that he could be subject to said sanctions. When the Court denied that motion, on the day that the bankruptcy cases were dismissed, it specifically also, on that day, named Adlairi as the designated person of the debtor under Rule 9001.

All that remained pending at that time in the bankruptcy court was the motion for contempt and, thus, Johnson represented Aldairi in the run up to, and preparation for, the hearing on Contempt (including filing a detailed objection, of specific line items in Mendez's counsel's fee request that were improper or not allowable). That hearing has now been stayed. But, since Mendez has sought sanctions, separate and apart from the contempt, against Adlairi in her Motion, Johnson is representing Aldairi in that matter as well.

Mendez, filed "Creditor Mendez's Motion for Sanctions " on February 12, 2010. As to Johnson, only, the sole request is that the Court sanction Johnson by ordering Johnson to disgorge all fees she has accepted during the pendency of the Debtors' bankruptcy petitions.

### **Argument**

A.  Nature of the Alleged Wrongful Conduct

Throughout the Motion the wrongful conduct alleged is that the entire

bankruptcy cases were nothing more than an artifice to keep Mendez from collecting her judgment.  Johnson was not involved in the cases from the beginning, but from facts which are of record in the case, it seems clear that Debtors made good faith attempts to pursue Chapter 11 relief and to pay a fair amount to their creditors.  Some of the supporting facts from the record are as follows:  Debtor had creditors other then Mendez.  In the first monthly operating reports filed by the Debtors, it is clear that Debtors did not have a sufficient amount of cash on hand to pay Mendez's claim.  A plan and disclosure statement was filed.  The only creditor who voted against the plan was Mendez, with other creditors voting in favor.  Although this Court denied confirmation, it did so because it determined, in the combined hearing on adequacy of the disclosure statement and confirmation, that the disclosure statement was not adequate, and so the court did not even reach whether Debtors could have crammed down over Mendez's "no" vote.

Even, assuming, arguendo, that Mendez were able to prove at an evidentiary hearing that somehow Debtors' filing was for the purpose of delaying her collection efforts, such actions have nothing to do with the conduct or actions of Johnson in these cases in representing her Non-Debtor clients.

In fact, the Motion only mentions Johnson a few times.

At paragraph 10, Mendez moves for sanctions under §105 and Rule 9011 "because the petition was filed for the improper purpose of delaying a creditor from enforcing her rights and was an abuse of the bankruptcy process."  Paragraph 10, without further comment on any alleged conduct of Johnson, seeks that "Aldairi's counsel [Johnson] be disgorged of attorneys' fees accepted during the pendency of this bankruptcy petition [sic]."

At paragraph 22, which falls under the heading in the Motion of sanctions being brought under Rule 9011, the culmination of the Motion's arguments in paragraphs 12-

22 that the filing of the bankruptcy was in bad faith, the Motion asks that " Debtors' counsel, Paul M. Bach, and Aldairi's counsel, Cindy Johnson, be disgorged of all fees paid to each of them as a sanctioned attorney based on the filing of a voluntary petition and appeal for the improper purpose of delaying Mendez from collecting on her judgment."  This phrase, naming the filing of the appeal, is the first instance, where the appeal is even mentioned.  It is the only instance in the Motion where any of the alleged bad conduct could even be attributed to Johnson.

At paragraph 26, which falls under the heading in the Motion of sanctions being brought under §105, Mendez likewise discusses the petition as having been filed for an improper purpose.  She sets forth law that allegedly would allow Debtors to be punished for this, and potentially the responsible person of the debtor to be punished.  But, without authority says that sanctions should be imposed against the responsible person "as well as his counsel."

The final place were Johnson is mentioned is in the "Wherefore" clause, where, consistent with the rest of the brief, what is requested as to relief against Johnson is a "disgorgement of fees accepted by […] Cindy Johnson."

Overall, then, the Motion seeks that Johnson have to disgorge fees she has accepted from anyone (not just the debtor) during the pendency of the bankruptcy case (no matter for what legal services accepted… be it for this case or others that Johnson is handling for her Non-Debtor Clients).  By asking for this disgorgement, the Motion seeks to hold Johnson liable for actions taken by the Debtor (who she did not represent) and for alleged actions taken by Aldairi which were taken at a time before he was her client.  Further, by asking for this disgorgement, Mendez claims that such is proper because the appeal Johnson filed for her Non-Debtor Clients was, by fiat of Mendez's saying this one phrase without any other argument or support in the Motion:  for the improper purpose of delaying Mendez from collecting on her judgment.

As set forth below, all requests for sanctions and disgorgement against Johnson are unfounded both in fact and in law and cannot be granted.

B.  Johnson Cannot Be Sanctions for Alleged Conduct of Debtors or Aldairi in Filing or Pursuing the Bankruptcy

The bulk of the motion argues that sanctions should be awarded against everyone—Debtors, their attorney, Aldairi, his attorney—because the filing of the bankruptcy and continuing the process was a bad faith filing and abuse of process.

By definition, since Johnson was not the attorney involved in filing the petition, since she was not the attorney for the Debtors at all, since she was not responsible for the actions of the Debtors and since she was not the attorney for Aldairi until long after the bankruptcy petitions were signed by him, even, assuming arguendo that the alleged bad faith filing/abuse of process argument were correct against them, there is no basis for this Court to be able to sanction Johnson for any of those actions.

None of the case law set forth in the Motion would lead to any other conclusion. There is not one case cited, and Johnson has found no case, where an attorney hired to represent the principal of the Debtors, personally, more than half way through the case, and who only is representing that principal as to a Rule 2004 motion, an appeal as to the order of that motion, and as to contempt and sanctions issues can be held liable for the initial bad faith filing by the Debtors (not her client) or their actions taken pursuant to the filing.

There was simply no wrongdoing by Johnson on these allegations that the entire case was filed in bad faith and such cannot be imputed to her.  Neither Rule 9011 nor §105 supports sanctions against Johnson on these issues.  On this point, Mendez's argument is not supported by fact or by law.  By Kurtz making this motion on behalf of Mendez she is leaving herself and her client open to sanctions being awarded against them for pursuing a motion that is not well founded in fact or law and does not contain

a good faith argument for extension of existing law.

C.  Johnson Cannot be Sanctioned for Pursuing the Appeal for Her Non-Debtor Clients

The only possible conduct alleged by Mendez that could be argued to be Johnson's conduct, or that for which she would be responsible, is Mendez's allegation, mentioned only once in one phrase of a sentence at paragraph 22 of the Motion, that, somehow, the appeal Johnson filed on behalf of her Non-Debtor clients "for the improper purpose of delaying Mendez from collecting on her judgment." There are several reasons why this allegation that the filing and pursing the appeal was sanctionable cannot stand.

First, as the Motion sets forth, under Rule 9011, the only exception to the safe harbor requirement of Rule 9011 is that the bankruptcy petition itself was filed in bad faith. Mendez mentions the appeal issue under the portion of the Motion brought under Rule 9011. Therefore, the rule prescribes:

> The motion for sanctions may not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected , except that this limitation shall not apply if the conduct is the filing of a petition in violation of subdivision (b).[1]

Thus, before Mendez could even file her Motion, claiming that the filing of the appeal by Johnson for her Non-Debtor Clients is sanctionable, Mendez was required to have served upon Johnson a motion for sanctions, detailing what conduct in filing and pursuing the appeal on behalf of her Non-Debtor clients was sanctionable. Then 21 days would have had to pass without Johnson having withdrawn whatever Mendez had detailed as offensive of the law.

Mendez never sent such a motion to Johnson.  (See Johnson's Affidavit, attached

---

[1] Petition is define by 11 U.S.C. §101 as the Petition in Bankruptcy which initiates the bankruptcy case under Chapter 11. Thus this exception does not apply to the filing or pursuit of an appeal for Johnson's Non-Debtor Clients.

as Exhibit E to her "Answer to Creditor Mendez's Motion for Sanctions.") Thus she is barred from proceeding against Johnson under Rule 9011. And, in addition, Mendez, and her attorney Kurtz, are, themselves, in violation of Rule 9011 for filing the Motion against Johnson. As set forth in In re kitchen, 327 B.R. 337 (Bankr. N.D.Ill. 2005), several courts have found that failure to follow the safe harbor provision requires denial of a sanctions motion. *Elliott v. Tilton,* 64 F.3d 213, 216 (5th Cir.1995); *First Bank of Marietta v. Hartford Underwriters Ins. Co.,* 307 F.3d 501, 510-511, 527-528 (6th Cir.2002); *Weinreich v. Sandhaus,* 156 F.R.D. 60, 63 (S.D.N.Y.1994), *aff'd without opinion,* 60 F.3d 810 (2d Cir.1995); *Mareno v. Jet Aviation of Am., Inc.,* 155 F.R.D. 74, 77 (S.D.N.Y.1994); *United Food & Commercial Workers Union v. Four B Corp.,* 893 F.Supp. 980, 987 (D.Kan.1995). *See also Hadges v. Yonkers Racing Corp.,* 48 F.3d 1320, 1328 (2d Cir.1995) (reversing sanctions "under all the circumstances, particularly the failure to afford Hadges the 21-day safe-harbor period"); *Radcliffe v. Rainbow Constr. Co.,* 254 F.3d 772, 789 (9th Cir.2001), *cert. denied,* 534 U.S. 1020, 122 S.Ct. 545, 151 L.Ed.2d 423 (2001) ("Rainbow did not serve the plaintiffs with the motion in advance of filing and thus did not comply with the 21-day advance service provision. Having not followed this procedure, Rainbow was not entitled to obtain an award from the plaintiffs"); *Martens v. Thomann,* 273 F.3d 159, 178 (2d Cir.2001) (reversing sanctions award where neither separate motion filed nor 21-day safe harbor period honored). Thus, this Court may not grant relief to Mendez that she is not entitled to seek under the Rules.

Second, even if Mendez were not barred from seeking sanctions, nowhere does the Motion detail how filing the appeal, and pursuing it was "delaying Mendez form collecting on her judgment." Mendez was stopped from pursuing her judgment because an automatic stay was in place. Nothing about the appeal of the order allowing a Rule 2004 examination so that Mendez could obtain information about the assets of non-

debtor parties did anything to change that.  In addition, that same order sought records from the third party banks about the transactions of the Debtors.  Johnson, on behalf of her Non-Debtor Clients, did not appeal that portion of the order.  Thus, Mendez could have obtained records about the Debtors from those third parties at any time after she issued her Rule 2004 subpoenas.

At most, keeping Mendez from getting records of Johnson's Non-Debtor Clients hampered her in her civil action to pierce the corporate veil to attach the judgment she obtained to Aldairi individually.  Since she did not have a valid pending complaint on file in that action, there was nothing wrongful about Johnson's filing an appeal trying to block her from getting discovery through the bankruptcy courts that would help her in that state court action.

Third, although this Court did not grant a stay of its order, the District Court did.  Thus, it found grounds existed to stay the turnover of documents of the non-debtor parties until it decided the issues on appeal.

Mendez moved to dismiss the appeal based upon the fact that she believed it to be an interlocutory appeal.  Because she saw the appeal as a delay, she asked the District Court to award Mendez her attorneys fees and costs for the appeal—a request which the District Court denied.  It stated:

> Mendez, in passing, requests that we grant her fees and costs, but she does not offer any legal argument or legal precedent to justify such a request. We deny this request.

Opinion of Judge Aspen, 2/1/09 in case number 09 C 6160.  Thus, although the District Court did determine that the issue was interlocutory, and, thus, dismissed the appeal, Mendez request for fee and costs for her work on the appeal was denied by the District Court.

The District Court was in the best position to determine whether the appeal before it was frivolous, and, thus, whether an award of fees and costs would have been

appropriate. It did not so find. Furthermore, by the doctrine of law of the case, because the District Court denies Mendez's request for fees an costs for the filing of the appeal, this Court may not countermand that order by finding that Mendez is entitled fees and costs for the appeal in this case.

D.  There is No Authority for Disgorgement of Johnson's Fees

Notably, the remedy sought against Johnson in the Motion is that she be sanctioned by way of disgorgement of fees she was paid for the time period during which the bankruptcy case was pending. No sanction of the full amount of fees and costs is requested to be ordered against Johnson as it is against the other parties to the motion.

There are two basis under which a court can order disgorgement of fees. One is if the person who received the fees was a "professional person" as defined in 11 U.S.C. §327. It has the authority to order disgorgement under §328 for any excessive or unapproved fees. The second basis is if the person who received the fees received an unauthorized post-petition transfer from the debtor's assets. Avoidance of the transfer can be made under §549. Mendez has not cited any other authority under which this Court could order disgorgement of fees, and Johnson has found no other authority.

Taking these separately, first, §327 requires persons retained by a debtor to represent a debtor as professional person who fall under its rubric. Johnson was not employed by the Debtors. She did not represent the Debtors. Her services were to her Non-Debtor Clients on the issues of the Rule 2004 examination order for their records, the appeal of same, and, eventually, upon the issues of contempt and of sanctions against Aldairi, personally. Based upon the fact that Johnson's employment does not fall under §327, this Court cannot apply §328 to her fees. Johnson's fees, and whether she gets to retain them or has to disgorge them, are not under the supervision or control of this Court.

Second, since a review of all of the Debtors' operating reports filed in these Cases shows that no payment was made by the Debtors to Johnson, the fees that she received were not transfers of assets of the Debtor.  In fact, Johnson's affidavit (attached as Exhibit E to her Answer) further sets forth the parties from whom payments were received:  Aya and Husgus, two of her other client.  Thus nothing Johnson received was an asset of the Debtor.  Therefore, turnover of any such monies is outside of the reach of §549, and may not be ordered to be disgorged or turned over.

Thus, this Court does not have the authority to order that Johnson pay over to anyone any of the monies she was paid to represent her Non-Debtor Clients while this case was pending.


D.  There is no Valid Basis for the Actions of Mendez and Kurtz in Bringing the Motion Against Johnson

Kurtz, as attorney for Mendez seems to be aware that she cannot validly have Johnson sanctioned for anything she is alleging, as the Motion does not seek that fees and costs be assessed as a sanction against Johnson, just the unfounded request for disgorgement.  One may ask why Kurtz would bring such an action, if she risked that she, herself, and her client, could possibly be sanctioned for it.

Kurtz, as touted on her web site at www.kurtzlaw.us is principally an attorney who practices in areas of law where there are manadatory fee shifting provisions for the winning plaintiff's attorney.  The web site describes the firm's areas of practice as Employment Discrimination, Civil Rights and Constitutional Violations, Civil Racketeering Cases ("RICO"), Qui Tam, False Claims Act, Whistle Blower Cases, Retaliatory Discharge, Police Disciplinary Actions & Appeals, Federal Government Employees, State and Local Government Employees, Police Misconduct, Contract Negotiations and Breach of Contract, Severance Negotiations, Class Action Litigation, General Litigation.  Nearly all of these areas have mandatory fee shifting.

Giving Kurtz the benefit of the doubt, maybe Kurtz is so unaccustomed to the fact that she could represent a client, and, yet, her client, and not the other side, has to pay her attorneys' fees, that she cannot fathom it being any other way.

Or, the more likely reason is that Kurtz has a specific ax to grind with Johnson. During the pendency of this case (and of the case pending in state court), Kurtz spoke to Suzanne LeMignot of CBS 2 television news in Chicago, about the judgment Mendez had against Debtors.  But she didn't phrase it that Mendez had a judgment against Debtors, instead, as set forth in the case of Aldairi v. Kurtz, filed in the Twelfth Judicial Circuit of Will County, Illinois, as case number 09 L 1059, "On reasonable information and belief, during her conversation with LeMignot, Kurtz told the reporter that Dr. Aldairi owed Mendez over $780,000.00, and that in lieu of paying his debt, he was spending his money developing an expensive home in Burr Ridge."[2]

When contacted by Ms. LeMignot, in order to dissuade Ms. LeMignot to nto proceed with this erroneous story, Johnson had to provide, on behalf of Aldairi, PDF copies of all of the documents from the District Court, this Court, and the state court showing that Mendez had a judgment against Perla Dental and Dental Profile, not Aldairi, and that Debtors in this case were proposing a Plan in bankruptcy to pay Mendez approximately $500,000.00 toward her claimed judgment against Debtors.

In order to recoupe the fees for the time expended by Johnson in doing this, and in order to demonstrate to Kurtz that she cannot just go around saying anything to anyone even if it is not true in order to get her way (much as she has done throughout this case), Johnson filed a complaint on behalf of Aldairi for her fees (of a few thousand dollars) and for punitive damages of $50,000.00.

This may be another reason why Kurtz would put her signature on the line to bring a motion for sanctions/disgorgement against Johnson which has no basis in law or

---

[2] Aldairi never lived in the house in Burr Ridge and the lender has filed a foreclosure proceeding because Aldairi was unable to pay the construction loan.

in fact.  We may never know her real reason, however.

## Conclusion

For the reasons set forth above, there is no basis in law or in fact for this Court to sanction Johnson or to order the disgorgement of fees she has been paid by her Non-Debtor Clients.  This Court should deny Mendez's motion requesting same.

        Respectfully submitted,
        Cindy M. Johnson, attorney for Dr.
        Husam Aldairi, Aya Dental, Ltd. and
        Husgus, LLC,


        By:  _____/s/  Cindy M. Johnson_____

Cindy M. Johnson
Johnson Legal Group, LLC
39 S. LaSalle Street, Suite 820
Chicago, Illinois  60603
312-345-1306