IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: | ) Case No.: 08-17148 and 08-17149 |
| | ) (Jointly Administered) |
| | ) |
| | ) Chapter 11 |
| DENTAL PROFILE, INC., and | ) |
| DENTIST, P.C. | ) Hon. Jacqueline P. Cox |
| | ) |
| Debtors. | ) . |

**DENTAL PROFILE, INC., DENTIST, P.C.' and PAUL M. BACH'S
MEMORANDUM OF LAW IN RESPONSE TO
<u>CREDITOR MENDEZ'S MOTION FOR SANCTIONS</u>**

NOW COMES, Dental Profile, Inc. and Dentist, P.C. ("Dental Profile, Inc. and Dentist, P.C."), by and through their attorney Paul M. Bach of Bach Law Offices and Paul M. Bach, individually and files this memorandum of law in support of this answer and against the Motion, as follows:

## <u>BACKGROUND INFORMATION</u>

Debtors filed a bankruptcy under Chapter 11 of the Bankruptcy code on July 2, 2008. This filing was brought on by the issuing of a citation on debtors' corporate account which significantly impaired the debtors ability to run its business.

Using Chapter 11 of the Bankruptcy Code as its tool, Debtor was attempting to reorganize its business is a manner that will appease its creditors and still allow both corporations to remain in business.

Nothing that happened prior to filing the bankruptcy case is relevant to this proceeding. Although on at least four different occasions Mendez makes a statement that is completely hearsay in her brief. This statement claims that during her hearing at

1

the District Court for the Northern District of Illinois, debtor's officer stated loud and clear that he needed the name of a good bankruptcy attorney. Debtors deny making any such statement. However, even if he did say that so what? How many potential debtors file bankruptcy because there is a large judgment against them that they have no means to pay without the some form of restructuring? There is no way Mendez or her counsel could interpret the meaning of Aldairi's words if they were spoken. However, Debtor never made that statement and when asked by the District Judge any such comment was denied.

All that truly matters, for purposes of this motion, is what Debtors intent was when they filed this case. Their intent was to reorganize and save their business from potential premature dissolution.

Every other statement made in Mendez's motion is before this Court had jurisdiction. They should be struck as irrelevant.

## RELEVANT STATUTE AND CITED AUTHORITIES

1) Federal Rules of Bankruptcy Rule 9011

2) Federal Rules of Bankruptcy 105(a)

3) In re Letourneau, No. 09 B 9199 (Bankr. N.D. Ill. 2/4/2010) (Bankr. N.D. Ill., 2010)

4) In re American Telecom Corp., 319 B.R. 857 (Bankr. N.D. Ill., 2004)

5) In re Ryan, 411 B.R. 609 (Bankr. N.D. Ill., 2009)

6) In re Kitchin, 327 B.R. 337 (Bankr. N.D. Ill., 2005)

7) In re Collins, 250 B.R. 645 (Bankr. N.D. Ill., 2000)

## **ARGUMENT**

In June of 2008, Bach Law Offices received a telephone call from a potential commercial client. This potential client had a significant problem. A Citation to Discover Assets was served upon their financial institution as a result of a civil court judgment which froze all their corporate accounts and line of credit  The potential client had no way to obtain the cash collateral which was needed to function in the regular course of business. Without access to its funds, the commercial client would not be able to stay in business and the corporations in question would need to close. The potential client discussed options and decided to file a case under Chapter 11 of the United States Bankruptcy Code. This would provide the opportunity for the client to reorganize, pay off a large judgment (either in full or some portion thereof as may later be agreed or ordered by the court) and remain in business.

The debtor files its bankruptcy, and everything seemed to go downhill from there. However, even if things did not go as intended, it does not mean that the filing of the Bankruptcy, motions, and pleadings were not filed with a proper purpose. Everything that has transpired over the past two years has been in an attempt to reorganize the debtor. But with a very difficult creditor, obstacles were thrown at debtor from every direction. Contrary to the opinion of Mendez, Debtor did attempt to provide the requested documents. There were challenges and delayed responses at times, but the information was tendered to the best of debtor's ability. It was never the debtor's intent to delay proceedings nor was it the intent of debtor to file for any reason other than to reorganize itself.

However, even though the debtor did not intentionally file any pleadings for an improper purpose, Mendez filed this motion for sanctions. It has been well established that "The central goal of Rule 11 is to deter abusive litigation practices." *Corley v. Rosewood Care Ctr., Inc. of Peoria*, 388 F.3d 990, 1013 (7th Cir.2004). The Rule focuses on the conduct of the parties and not the results of the litigation. "Rule 11 sanctions are only to be granted sparingly, and should not be imposed lightly." *Lefkovitz v. Wagner*, 219 F.R.D. 592, 592-93 (N.D.Ill.2004), aff'd, 395 F.3d 773 (7th Cir.2005) (quoted from *In re Ryan*, 411 B.R. 609 (Bankr. N.D. Ill., 2009)).

However, before discussing the nuances of Fed. R. Bankr 9011 and 105, there are some preliminary matters that must be brought to the courts attention. First is the matter of these two cases were filed in July of 2008. If Mendez believed that these cases were filed for improper purposes, why did she wait until the cases were dismissed almost two years later to let that be known? Where was the motion to dismiss? If she believed that this case was filed improperly, then it is Mendez who should be defending a motion pursuant to Fed. R. Bank 9011. Pleading after pleading, Motion after motion, Hearings upon hearings briefing schedules, and trials, not once has this basic issue been presented. If it had been, maybe, the debtors would have had a chance to mitigate or explain. Instead, the case has been dismissed, and this motion filed without any chance of remedying or clarification. In fact, on numerous occasions, the issue of converting the underlying case to a case under Chapter 7 was approached. On each such occasion, Mendez through her attorney requested to keep this case as a Chapter 11 filing. How can it be an improper purpose if the creditor herself wanted the case to remain under Chapter 11,

<u>Fed. R. Bnkr 9011</u>

The case law regarding sanctions pursuant to Fed. R. Bankr. 9011 is vast. The "improper purpose clause," under Bankruptcy Rule 9011(b)(1) is directed at abusive litigation practices and encompasses papers filed to cause unnecessary delay, to increase litigation costs, or filed to harass. *Troost v. Kitchin (In re Kitchin)*, 327 B.R. 337, 366 (Bankr.N.D.Ill. 2005); *Am. Telecom*, 319 B.R. at 872. In order to determine whether a paper was interposed for any improper purpose, a court must look to "objectively ascertainable circumstances that support an inference" that the non-movant's purpose for filing a paper was improper within the meaning of Bankruptcy Rule 9011(b)(1). *Collins*, 250 B.R. at 662. "A paper interposed for any improper purpose is sanctionable whether or not it is supported by the facts and the law, and no matter how careful the pre-filing investigation." *Kitchin*, 327 B.R. at 366. What could debtor's improper purpose be? Debtor filed their cases as a Chapter 11 in order to provide for Mendez. If their intent was to avoid the judgment, a Chapter 7 bankruptcy would have sufficed.

There is no doubt that the debtors have failed to adequately reorganize under Chapter 11 of the Bankruptcy Code and even to provide timely information requested by the court. However, these failures were not due to improper purposes at the time of filing. As stated above, debtor needed relief from the bankruptcy code in order to maintain use if its collateral to stay in business. Yes it is true that the case was dismissed and that the judge made comments on the record that she did not see an intent to reorganize, but that was not a comment based on the debtors intent at the time of filing, it was based on the Courts determination based on Debtor's lack of cooperation. Although Debtors could still argue that they did everything they could to

comply with court orders and Mendez's requests, this issue is not part of the motion before the court. What is before the court is a very simple question with a very complex answer; did the debtors file their underlying Bankruptcy Case with on improper purpose in mind? The Short answer is NO.

A second question that must be asked is did Mendez comply with Fed. R. Bankr. 9011 when she filed her motion for sanctions? Once again the answer is no. The motion must be served, but not filed or presented to the Court unless, within twenty-one days of service, the non-movant has not withdrawn or corrected the "challenged paper, claim, defense, contention, allegation, or denial." Fed. R. Bankr.P. 9011(c)(1)(A).

A court that imposes sanctions without adhering to these provisions abuses its discretion. See *Corley v. Rosewood Care Center, Inc.*, 142 F.3d 1041, 1058 (7th Cir.1998); *Johnson v. Waddell & Reed, Inc.*, 74 F.3d 147, 150-151 (7th Cir.1996) (district court's failure to comply with procedural requirements of amended Rule 11 constitutes an abuse of discretion, requiring sanction to be vacated). The first time Debtors or their counsel heard of this motion for sanctions was they day it was filed.

Several Courts have found that failure to follow the safe harbor provision requires denial of a sanctions motion. *Elliott v. Tilton*, 64 F.3d 213, 216 (5th Cir.1995); *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 510-511, 527-528 (6th Cir.2002); *Weinreich v. Sandhaus*, 156 F.R.D. 60, 63 (S.D.N.Y.1994), aff'd without opinion, 60 F.3d 810 (2d Cir.1995); *Mareno v. Jet Aviation of Am., Inc.*, 155 F.R.D. 74, 77 (S.D.N.Y.1994); *United Food & Commercial Workers Union v. Four B Corp.*, 893 F.Supp. 980, 987 (D.Kan.1995). See also *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1328 (2d Cir.1995) (reversing sanctions "under all the circumstances,

particularly the failure to afford Hadges the 21-day safe-harbor period"); *Radcliffe v. Rainbow Constr. Co.*, 254 F.3d 772, 789 (9th Cir.2001), cert. denied, 534 U.S. 1020, 122 S.Ct. 545, 151 L.Ed.2d 423 (2001) ("Rainbow did not serve the plaintiffs with the motion in advance of filing and thus did not comply with the 21-day advance service provision. Having not followed this procedure, Rainbow was not entitled to obtain an award from the plaintiffs"); *Martens v. Thomann*, 273 F.3d 159, 178 (2d Cir.2001) (reversing sanctions award where neither separate motion filed nor 21-day safe harbor period honored). Quoted from *In re Kitchin*, 327 B.R. 337 (Bankr. N.D. Ill., 2005)

Direct evidence of motive, purpose, and reasoning is hard to come by at hearings, forcing courts to come up with the "objective test for improper purpose" for Rule 9011(b)(1) inquiries. Under this test, the Court looks to "objectively ascertainable circumstances that support an inference" that the nonmovant's purpose for filing a paper was improper within the meaning of Rule 9011(b)(1). *Collins*, 250 B.R. at 662, 664.

In a recent case which was heard before Judge A. Benjamin Goldgar, a debtor filed an involuntary bankruptcy case against himself. Judge Goldgar found that the case was filed for improper purposes. *In re Letourneau*, No. 09 B 9199 (Bankr. N.D. Ill. 2/4/2010) (Bankr. N.D. Ill., 2010).

Judge Goldgar stated an attorney or unrepresented party who presents "a petition, pleading, written motion, or other paper" to the court, whether by "signing, filing, submitting, or later advocating," makes four certifications to the court. Three are certifications that the legal assertions in the case have a basis in the law (or a fair argument for the law's modification), and the factual contentions and denials in the case have evidentiary support or are likely to after a reasonable opportunity for investigation.

Fed. R. Bankr. P. 9011(b)(2)-(4). Just as in *Letoulneau* the fourth element is relevant here – it is a certification that the paper "is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Fed. R. Bankr. P. 9011(b)(1).

In determining whether Rule 9011(b)(1) has been violated, the critical question is why the allegedly offending paper was filed. *Kitchin*, 327 B.R. at 366; *Collins*, 250 B.R. at 661; see also *Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1083 (7th Cir. 1987). That question is answered by considering whether "' objectively ascertainable circumstances'" support the inference that the purpose of the filing was improper. *Ryan*, 411 B.R. at 615 (quoting Collins, 250 B.R. at 662); see also *Beeman v. Fiester*, 852 F.2d 206, 209 (7th Cir. 1988) ("Although the emphasis is on the party's motive for filing the paper, the party's conduct is judged on an objective standard based on the circumstances of the case"). . *In re Letourneau,* No. 09 B 9199 (Bankr. N.D. Ill. 2/4/2010) (Bankr. N.D. Ill., 2010).

When Judge Goldgar referred to the Parties conduct, he was referring to forged signatures, falsified documents, intentional delay in foreclosure proceedings, misrepresentations to the Court and many other serious wrong doings of Letourneau. There are no such grievous acts on the part of the debtor in this case. If the Debtor in the case at bar is guilty of anything, it is truly on not keeping adequate accounting records. At no time did the debtors or their attorney file false documents, lie to or intentionally mislead the Court. Nothing the debtors did was in an attempt to do anything other than keep their business functioning and reorganize.

Fed. R. Bnkr 105(a)

A bankruptcy court's authority to impose sanctions under § 105(a) permits it to punish conduct that Rule 9011 cannot reach; *In re Rainbow Magazine*, 77 F.3d 278, 284-85 (9th Cir.1996) (holding that bankruptcy courts have inherent power under § 105(a) to sanction bad faith or vexatious conduct that does not fall within the purview of Rule 9011). Section 105(a) grants much broader powers and can reach all parties involved, rather than only those who signed or advocated pleadings. Bankruptcy courts have both statutory and inherent powers to sanction under § 105(a).

Section 105(a) of the Bankruptcy Code provides:

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a). "Section 105 grants broad powers to implement the provisions of Title 11 and to prevent an abuse of bankruptcy process." In re Volpert, 110 F.3d 494, 500 (7th Cir.1997). The plain language of § 105 empowers bankruptcy courts to sanction conduct that abuses the judicial process and vexatiously multiplies bankruptcy proceedings. Id. at 501 (citing with approval and following Rainbow Magazine, 77 F.3d 278, in which the Ninth Circuit held that bankruptcy courts have authority under § 105 to impose sanctions for the bad faith filing of a bankruptcy petition). Section 105(a) confers both statutory and inherent authority upon the bankruptcy courts. The Court may use its

statutory authority under § 105(a) to the debtor's attorney if it finds that they have abused the judicial process.

Bankruptcy relief is limited to the honest but unfortunate debtor. Grogan v. Garner, 498 U.S. 279, 286-87, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991). It is intended to give a fresh start in life to "certain insolvent debtors," Id., so they can "reorder their affairs, make peace with their creditors, and enjoy `a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.'" Id. quoting Local Loan Co. v. Hunt, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934). It is not intended to allow the clever and determined rich an opportunity to slip away from a single, disfavored creditor. In re Collins, 250 B.R. 645 (Bankr. N.D. Ill., 2000)

*In re Collins*, is a case in which the court reviews the concept of sanctions pursuant to Fed. R. Bnkr 105(a).  Collins filed a bankruptcy case for the sole purpose of avoiding continued litigation with one particular creditor.  He openly admitted in Court that they never had an intent to anything other than wipe out that debt and stop the long and involved litigation process.  According to Judge Irwin Katz, Collins' bankruptcy filing was both unreasonable and vexatious.  Therefore, the Court entered sanctions against the debtor.

There is no unreasonable of vexatious behavior on the part of the debtors in the case at bar and attempted to work out an acceptable disclosure statement and plan. It is true that the plan never got confirmed, but it is the intent of the debtors that should be reviewed.  Debtors fully intended to reorganize and work out a plan of repayment.

Never was it their intent to use the bankruptcy code in an improper way to obtain an improper purpose.

## CONCLUSION

The debtors did not file their bankruptcy case for an improper purpose and therefore, Mendez's motion for sanctions pursuant to Federal Rule of Bankruptcy Procedure 9011 and 11 USC 105 should be denied and for any further relief this court deems just.

Respectfully submitted,
Dental Profile, Inc./Dentist/P.C. and
Paul M. Bach,

By: _____/s/ Paul M Bach_____

Paul M. Bach
Bach Law Offices
PO Box 1285
Northbrook, Illinois 60062
(847) 564-0808